BRORBY, Circuit Judge.
 

 This case arises out of a fraudulent investment scheme with which this court is all too familiar.
 
 See, e.g., Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Assocs., Inc.),
 
 48 F.3d 470 (10th Cir.1995). Eugene Johnson was one of the innocent investors in the scheme. He finds himself among the small group of investors who received more money from the scheme than he invested. Harvey Sender, as trustee in bankruptcy for the entities used in the operation of the scheme, sued Mr. Johnson in bankruptcy court to recover certain pre-petition transfers. Though Mr. Sender sued Mr. Johnson under various theories of recovery, this appeal only involves his preferential transfer claim under 11 U.S.C. § 547(b). After a trial, the bankruptcy court found against Mr. Sender on his claim. On appeal, the district court reversed, finding Mr. Sender had “demonstrated the requisite elements ■ of a preferential transfer.” Mr. Johnson appeals the district court’s decision. We exercise jurisdiction over his appeal under 28 U.S.C. § 158(d). We reverse the district court’s decision.
 

 I. Standard of Review
 

 In reviewing the decision of a bankruptcy court pursuant to 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases. We therefore review the bankruptcy court’s legal determinations
 
 de novo
 
 and its factual findings for clear error.
 
 Phillips v. White (In re White),
 
 25 F.3d 931, 933 (10th Cir. 1994);
 
 see also Sender,
 
 48 F.3d at 472. “[W]hen a lower court’s factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to
 
 de novo
 
 review.”
 
 Osborn v. Durant Bank & Trust Co. (In re Osborn),
 
 24 F.3d 1199, 1203 (10th Cir.1994).
 

 II. Facts & Procedural Background
 

 Most of the relevant facts are undisputed. In the late 1970s, James Donahue started an investment fund known as Hedged-Investments. He formed a corporation named Hedged-Investments Associates, Inc. (“HIA Inc.”), of which he was the sole stockholder, to operate the investment fund. He enticed investors into the fund by claiming he had developed a sophisticated strategy for investing in hedged stock options that yielded high
 
 *1269
 
 returns with low risks. Mr. Donahue established three limited partnerships as vehicles to allow investors into the Hedged-Investments fund. These limited partnerships were named Hedged-Investments Associates, L.P. (“HIA L.P.”), Hedged-Security Associates, L.P. (“HSA L.P.”), and Hedged-Investments Associates II, L.P. (“HIA II L.P.”) (collectively the “Debtor Partnerships”). HIA Inc. served as the managing general partner of the three Debtor Partnerships. When an interested investor sought to invest in the Hedged Investments fund, Mr. Donahue purportedly sold the investor an interest in one of the Debtor Partnerships. None of the Debtor Partnerships maintained a bank account; all the invested funds were commingled in a single account held in the name of HIA Inc. Mr. Donahue consistently reported high earnings to the investors. In truth, however, the Hedged-Investments fund generated enormous losses. Mr. Donahue kept these losses from being discovered by running a Ponzi scheme — he paid investors who requested cash withdrawals from their accounts with the contributions of other investors.
 

 Mr. Donahue’s scheme collapsed in August 1990. On August 80, 1990, HIA Inc. filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. On September 7,1990, the case was converted to one under Chapter 7, and the bankruptcy court appointed Mr. Sender as trustee of HIA Inc.’s estate. Mr. Sender then commenced involuntary bankruptcy actions against the Debtor Partnerships. He filed an involuntary petition under Chapter 7 against HSA L.P. on September 28, 1990, and against HIA L.P. and HIA II L.P. on October 3,1990.
 

 Mr. Johnson’s relationship with the Hedged-Investments fund began in 1987, when he met a man named Larry Comstock. Mr. Comstock was the general partner of a limited partnership named CCM Financial Group, L.P. (“CCM”). Apparently, CCM was a sub-limited partnership in HSA L.P.;
 
 i.e.,
 
 it was a limited partner in HSA L.P. At Mr. Comstock’s urging, Mr. Johnson agreed to invest $60,000 in the Hedged-Investments fund via CCM. Mr. Johnson understood that CCM would use the entire $60,000 to purchase a limited partnership interest in HSA L.P. on his behalf. In January 1988, Mr. Johnson remitted a check to CCM for $60,-000. CCM deposited the check into its bank account and then transferred the entire amount to HSA L.P. In March 1990, Mr. Johnson decided to liquidate his investment in the Hedged-Investments fund. Up to this point, he apparently had made no cash withdrawals. On March 12, 1990, Mr. Johnson wrote Mr. Comstock and requested that his account balance be liquidated. On April 2, 1990, Mr. Comstock wrote Mr. Donahue requesting liquidation of Mr. Johnson’s interest in the Hedged-Investments fund. In response to this letter, Mr. Comstock received a check written on HIA Inc’s account for $90,707.09. The check was dated June 9, 1990, and was payable to “CCM Financial— FBO Eugene Johnson.” A notation on the check read, “termination of capital account.” Mr. Comstock deposited the check in the account of AWF Hedged, Ltd., the new name of CCM. Once the check cleared, Mr. Com-stock wrote a check on AWF’s account for $90,707.09 payable to Mr. Johnson. Thus, Mr. Johnson received $30,707.09 more than he invested in the Hedged-Investments fund. Many others were not so fortunate. According to Mr. Sender, approximately 1,400 hundred investors lost aggregately about $200 million.
 

 For the period of January 1, 1990, through June 30,1990, HSA L.P. guaranteed its limited partners a minimum annual return on their investment of fifteen percent.
 
 [1]
 
 This guarantee apparently was limited, however, “by an escrow account that Mr. Donahue had
 
 *1270
 
 maintained at Central Bank of Denver.” Our analysis below reveals the significance of this guarantee and its limitation.
 

 Mr. Sender, as trustee for the four entities used in Mr. Donahue’s investment scheme, sued Mr. Johnson in the bankruptcy court for the district of Colorado. His complaint alleged three claims for relief. First, he alleged the entire $90,707.09 was avoidable as a preferential transfer under 11 U.S.C. § 547(b). Second, he alleged $30,707.09 of the transfer was avoidable as a constructive fraudulent conveyance under 11 U.S.C. § 548(a)(2). Third, Mr. Sender claimed $30,-707.09 was recoverable under sections 607 and 608(2) of the Colorado Uniform Limited Partnership Act of 1981, Colo.Rev.Stat. § 7-62-101
 
 et seq. See
 
 Colo.Rev.Stat. §§ 7-62-607 & 608(2). Mr. Sender later added a claim under 11 U.S.C. § 548(a)(1).
 

 After a trial, the bankruptcy court denied all of Mr. Sender’s claims. The court rejected the claims under 11 U.S.C. §§ 547(b) and 548(a)(2) and the claim under Colo.Rev.Stat. § 7-62-607 on the ground Mr. Sender had not proven the Hedged Investment entities were insolvent at the time of the transfer to Mr. Johnson. The court reached this finding after determining the limited partnership interests were “equity securities and not debts.” The court denied the claim under Colo.Rev.Stat. § 7-62-608(2) because Mr. Sender did not prove “the distribution was in violation of the partnership agreement.” Finally, the bankruptcy court denied Mr. Sender’s claim under 11 U.S.C. § 548(a)(1) because Mr. Sender failed to present any evidence at trial “indicating any fraudulent intent or any intent to hinder or delay any creditor.” Mr. Sender appealed to the district court, which properly exercised jurisdiction over the appeal under 28 U.S.C. § 158(a).
 

 The district court reversed. First, the district court concluded the bankruptcy court made a legal error in finding the debtor entities were solvent. According to the district court, the limited partner investors in the Hedged-Investments fund were more than equity security holders — they had claims against the debtor estates and were therefore creditors, as well as equity security holders. After determining Mr. Johnson was a creditor of an insolvent debtor, the district court went on to find Mr. Sender had satisfied the remaining requirements of 11 U.S.C. § 547(b). Accordingly, the district court held Mr. Sender could avoid the $90,707.09 transfer to Mr. Johnson. Because the district court found the entire transfer avoidable as a preference under § 547(b), it declined to address the validity of Mr. Sender’s other claims. Mr. Johnson appeals the § 547(b) decision.
 

 III. Analysis
 

 According to 11 U.S.C. § 547(b),
 

 [T]he trustee may avoid any transfer of an interest of the debtor in property—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A)on or within 90 days before the date of the filing of the petition;
 

 ... and
 

 (5) that enables such creditor to receive more than such creditor would receive if—
 

 (A) the ease were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 The burden of proving each of these elements rests, on the trustee. 11 U.S.C. § 547(g) (“the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section”);
 
 Danning v. Bozek (In re Bullion Reserve of N. Am.),
 
 836 F.2d 1214, 1217 (9th Cir.),
 
 cert. denied,
 
 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).
 

 As our first order of business, we would like to address the issue of who the debtor is in this case. In his capacity as bankruptcy trustee for the legal vestiges of the Hedged-
 
 *1271
 
 Investments fund, Mr. Sender represents the estates of four entities: HIA Inc., HIA L.P., HIA II L.P., and HSA L.P. Both the bankruptcy court and the district court failed to address squarely the issue of which of these four entities Mr. Sender represents in this case,
 
 i.e.,
 
 which entity is the debtor. Section 547(b) allows the trustee to avoid certain transfers of an interest in the debtor in property so long as the transfers were made “on or within 90 days before the date of the filing of the [bankruptcy] petition.” 11 U.S.C. § 547(b)(4)(A).
 
 [2]
 
 As neither Mr. Sender nor Mr. Johnson disputes, HIA Inc. was the only debtor entity
 
 of
 
 the four Mr. Sender represents to file its petition within ninety days after the transfer to Mr. Johnson. Accordingly, HIA Inc. is the only entity eligible for consideration as the debtor pursuant to Mr. Sender’s claim under § 547(b). In other words, Mr. Sender can prevail on his claim under § 547(b) only if he can meet his burden of proof as to each element of that claim qua HIA Inc.
 

 Pursuant to § 547(b)’s first enumerated requirement, Mr, Sender had the burden of proving the pre-petition transfer to Mr. Johnson was “to or for the benefit of a creditor” of HIA Inc. 11 U.S.C. § 547(b)(1). The bankruptcy court found Mr. Johnson was not a creditor of HIA Inc. Noting that an equity security holding does not make the equity holder a creditor, the bankruptcy court asserted: “The facts presented indicate that it was the intent of [Mr.] Comstock and [Mr.] Donahue, at the time CCM invested [Mr.] Johnson’s $60,000.00, that CCM become an equity security holder in HSA [L.P.]_ Therefore, the Court concludes that neither CCM nor [Mr.] Johnson was a creditor of the debtors.” The bankruptcy court rejected Mr. Sender’s contention that HSA L.P.’s guaranteed return of fifteen percent made Mr. Johnson a creditor. The court reasoned:
 

 An investor, based on one transaction, with the specific intent to become an equity security holder, cannot be considered both an equity security holder and a creditor. Either CCM became an equity security holder in HSA [L.P.] as a result of its investment of $60,000 on behalf of [Mr.] Johnson, or it merely made a loan to HSA [L.P.], thereby being entitled to a guaranteed rate of return.
 

 The district court disagreed with the bankruptcy court’s analysis. According to the district court:
 

 [Mr. Johnson] and the other investor limited partners had a legal right to payment of the guaranteed return. While limited partners are not claim holders by virtue of their partnership interests alone, the added factor of guaranteed returns makes them both claim holders and equity security holders for purposes of the Bankruptcy Code. The limited partners are creditors because they are entities with “a claim against the debtor that arose ... before the order for relief concerning the debtor.” 11 U.S.C. § 101(10). Therefore, the distribution to [Mr. Johnson] was “to or for the benefit of a creditor.”
 

 In this appeal, Mr. Sender predictably advocates the position taken by the district court. He argues Mr. Johnson was a creditor of HIA Inc. because of his “legal entitlement to the guaranteed payments of money.”
 
 [3]
 
 Mr. Johnson argues he was not a
 
 *1272
 
 creditor, contending the fifteen percent guarantee did not convert his equity security holding in HSA L.P. into a claim against HIA Inc. Focusing on the fact that HIA Inc. is the debtor in this case, Mr. Johnson also argues that Mr. Sender presented no evidence at trial to establish that the guarantee from HSA L.P. to its limited partners rendered HIA Inc. liable on that guarantee.
 

 We begin our analysis by noting Mr. Johnson cannot be considered a creditor of HIA Inc. merely on the basis of his equity investment in HSA L.P. This is true for two reasons. First, “limited partners’ interests do not constitute ‘claims’ as defined under [11 U.S.C. § 101(5) ]. They are equity security holders.... Simply put, an equity interest is not a claim against the debtor....”
 
 In re Pine Lake Village Apartment Co.,
 
 21 B.R. 478, 480 (Bankr.S.D.N.Y.1982);
 
 see also In re Riverside-Linden Inv. Co.,
 
 85 B.R. 107, 112 (Bankr.S.D.Cal.1988) (“‘partners in the [debtor] partnership are not claim holders by virtue of their partnership interest _’”) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 197 (1977),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 6158),
 
 aff'd,
 
 99 B.R. 439 (9th Cir.1989); 11 U.S.C. § 101(16) (establishing that an “interest of a limited partner in a limited partnership” is an “equity security”). As established by 11 U.S.C. § 101(10), “creditor” means an “entity that has a claim against the debtor.” Since limited partners do not satisfy this definition on the basis of their partnership interests, they are not creditors on the basis of those interests.
 
 See Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.),
 
 925 F.2d 320, 323 (9th Cir.1991) (“A partnership interest is not a claim.... Partners own the partnership subject to the profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. Thus, an ownership interest is not a claim against the partnership.”).
 

 The second, more fundamental, reason why Mr. Johnson did not become a creditor of HIA Inc. merely by virtue of his equity interest in HSA L.P. is because HIA Inc. and HSA L.P. áre separate entities. Though HIA Inc. was the managing general partner of HSA L.P., Mr. Sender has given us no factual or legal reason to believe that Mr. Johnson’s equity interest in the partnership would make him a creditor of the general partner.
 

 Since Mr. Johnson cannot be considered a creditor of HIA Inc. merely because he owned an equity security interest in HSA L.P., Mr. Sender is left to argue that the fifteen percent guaranteed return for the first half of 1990 created a creditor-debtor relationship between Mr. Johnson and HIA Inc. As we have already discussed, this guarantee is evidenced by an exhibit J proffered by Mr. Sender at trial. The exhibit is a letter, and the letterhead indicates it was sent by HSA L.P. The letter is signed by Mr. Donahue on behalf of HIA Inc. as “General Partner.” Mr. Sender argues that this guarantee from HSA L.P. to its limited partners made Mr. Johnson a creditor of HIA Inc. Mr. Sender focuses his argument on the reasoning and holding in
 
 In re St. Charles Preservation Investors, Ltd.,
 
 112 B.R. 469 (D.D.C.1990), in which the court was asked to decide whether a partnership agreement that guaranteed limited partners a stated return on their capital investments made the limited partners creditors of the partnership.
 
 See id.
 
 at 470. The court in
 
 St. Charles
 
 found the guarantee made the limited partners creditors of the partnership.
 
 Id.
 
 at 474-75.
 

 In reversing the bankruptcy court in this case, the district court relied on the
 
 St. Charles
 
 decision. Mr. Sender urges us to do the same. There is an important distinction between
 
 St. Charles
 
 and the instant case that the district court did not address. In
 
 St. Charles,
 
 the court was faced with whether a guaranteed rate of return from a partnership to its limited partners made the limited partners creditors of the
 
 partnership.
 
 In this case, the partnership, HSA L.P., is not the debtor. The debtor is HIA Inc., the managing general partner of HSA L.P. Thus, we
 
 *1273
 
 need not consider whether the 1990 guarantee created a claim by Mr. Johnson against HSA L.P.
 
 [4]
 
 until we first determine whether Mr. Sender has proven HIA Inc. would be liable on that claim. Mr. Sender’s brief devotes one sentence to this issue. He contends HIA Inc. “was the general partner of HSA, L.P. and was responsible for the guaranteed minimum returns.” Though HIA Inc. might have been the general partner of HSA L.P., that does not
 
 a fortiori
 
 mean it was equally responsible, along with HSA L.P., for satisfying the guaranteed returns. Whether HIA Inc. as general partner of HSA L.P. was independently responsible for the debts of the partnership is a factual issue Mr. Sender had the burden of proving at trial. The bankruptcy court did not find HIA Inc. was liable for the debts of HSA L.P., and Mr. Sender does not support his statement with cites to uncontroverted evidence in the record that would justify such a finding.
 
 [5]
 

 To be sure, our own review of the scant record provided on appeal suggests HIA Inc. did make some type of assurance that the minimum return would be paid. Exhibit J references “the minimum rate-of-return ... against which [HIA Inc.] has pledged corporate assets.” The exhibit does not explain which corporate assets HIA Inc. purportedly pledged or how it pledged them. Mr. Com-stock shed some light on the so-called pledge in his testimony. When asked whether exhibit J “was in fact a guarantee of the minimum rate of return,” Mr. Comstock responded, “It was always understood by me that it was a limited guarantee backed by an escrow account that Mr. Donahue had maintained at Central Bank of Denver.” We have seen nothing in the record to indicate what, if any, funds resided in this escrow account. For all we know, it had no funds. The entire guarantee, in that it seems to have been limited to the escrow account, could have been illusory. Certainly, we cannot affirm a reversal of the bankruptcy court on the speculation that it was not illusory.
 

 Given that Mr. Sender has not shown us he met his burden of proving HIA Inc. was independently liable for the debts of HSA L.P., we conclude the bankruptcy court did not clearly err in findipg Mr. Johnson was not a creditor of HIA Inc. Since Mr. Johnson was not a creditor of HIA Inc., Mr. Sender cannot satisfy the requirements of 11 U.S.C. § 547(b).
 

 For the reasons given above, we REVERSE the decision of the district court to the extent it is inconsistent with this decision.
 

 [1]
 

 . Though Mr. Johnson disagrees, the bankruptcy court clearly found that HSA L.P. guaranteed its limited partners a minimum rate of return of fifteen percent for 1990. We disagree with the bankruptcy court's finding only to the extent it found HSA L.P. guaranteed a fifteen percent return for all of 1990. The only evidence of the fifteen percent guarantee we have been provided is Mr. Sender’s trial exhibit J. The bankruptcy court cited exhibit J as its evidentiary support for its finding of a guarantee for all of 1990. By its own terms, however, exhibit J relates only to "to the period January 1 through June 30, 1990." Therefore, to the extent the bankruptcy court found a guaranteed minimum return of fifteen percent for all of 1990, it clearly erred.
 

 [2]
 

 . The section also permits a trustee to avoid transfers made up to one year before the debtor’s bankruptcy filing if the transferee-creditor “was an insider.” 11 U.S.C. § 547(b)(4)(B). Mr. Sender did not bring an insider preference claim; therefore, we are only concerned with the 90 day period provided by § 547(b)(4)(A).
 

 [3]
 

 . Mr. Sender alternatively argues Mr. Johnson was a creditor of HIA Inc. because of HIA Inc.’s fraud. According to this argument, HIA Inc. became indebted to Mr. Johnson from the moment it accepted his fraudulently induced investment. From what we can tell, Mr. Sender raises this argument for the first time in this appeal. He has given us no reason to believe he raised it before the bankruptcy court or the district court. Accordingly, we will not address the merits of Mr. Sender’s fraud argument. See
 
 Lyons v. Jefferson Bank & Trust,
 
 994 F.2d 716, 720-21 (10th Cir. 1993) (noting this court generally will refuse to consider an argument raised for the first time on appeal unless the issue concerns sovereign immunity or jurisdiction). Though not relevant to our decision not to hear his fraud argument, we note Mr. Sender represents in his brief that the district court partially supported its finding of a creditor-debtor relationship by relying on this fraud theory. Our reading of the district court's decision leads us to conclude Mr. Sender
 
 *1272
 
 has misrepresented that decision to us. Put simply, the district court’s analysis of .whether Mr. Johnson was a creditor of HIA Inc. relies exclusively on the notion that the fifteen percent guarantee created a claim against HIA Inc. Not once does the district court mention fraud as a basis for its conclusion that Mr. Johnson was a creditor of HIA Inc. We counsel Mr. Sender to be more careful in the future.
 

 [4]
 

 . Since the issue of whether Mr. Johnson was a creditor of HSA L.P. is not relevant to this case as decided, nothing we say should be taken as holding he was a creditor of HSA L.P. Neither should our discussion of the
 
 St. Charles
 
 decision be seen as an adoption or rejection of that decision as it might apply to the facts of this case.
 

 [5]
 

 . The only support Mr. Sender offers for his statement is the orally delivered decision of the bankruptcy court in
 
 Sender v. Greenlee (In re Hedged-Investment Associates, Inc.),
 
 (91-1930CEM) (June 11, 1992) (oral ruling). In
 
 Greenlee,
 
 the court found "the general partner [HIA Inc.] had an obligation to ... make that payment out of partnership funds if they were available and out of the general partner’s own pocket if funds were not available.” Mr. Johnson was not a defendant in
 
 Greenlee;
 
 therefore, the finding in
 
 Greenlee
 
 is not binding on him. If Mr. Sender wanted a similar finding against Mr. Johnson, then he needed to prove it against Mr. Johnson.