**In re MULTIMEDIA COMMUNICATIONS GROUP WIRELESS ASSOCIATES OF LIBERTY COUNTY, GEORGIA, L.C., Debtor.**

**George E. MILLS, Jr., Trustee, Plaintiff,**

**v.**

**William E. WEBSTER et al., Defendants.**

Bankruptcy No. 95–5528–BKC–3F7.
Adversary No. 96–349.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 28, 1997.

Ronald Bergwerk, Jacksonville, FL, for defendants.

Stewart P. Chambers, Fort Lauderdale, FL, for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on Trustee's Verified Complaint for Recovery of Fraudulent Transfers and Motions for Temporary Restraining Orders. (Doc. 1). Defendants filed a Motion to Dismiss. (Doc. 34). The Court entered an Order Denying the Motion to Dismiss. (Doc. 51). The Defendants filed an Answer. (Doc. 54). A trial was held on May 7 and 8, 1997. Based on the evidence presented at trial, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

George E. Mills, Jr., the Trustee in this Case, filed a thirty-four count Complaint against Defendants. (Doc. 1). Defendants, William Webster and Gregory Hoenig, were principle managers of the Debtor, Multimedia Communications Group Wireless Associates of Liberty County, Georgia, L.C. ("Debtor"). (Pl.'s Ex. 2A). In the early 1990's, Hughes Communications L.C.G., in association with General Motors and Phillip & Thompson Consumer Electronics Company, developed a new technology called Direct Broadcast Satellite or DBS. This technology utilizes satellites in space in a geocentric orbit to broadcast direct programming signals to satellite dishes owned by subscribers. The National Rural Telecommunications Cooperative ("NTRC") entered into an agreement with Hughes Communications L.C.G. to provide Direct TV to rural areas throughout the country through a network of licensed members and affiliates. One such licensed member is Ocmulgee Communications, Inc. ("OCI") located in Eastman, Georgia which holds the broadcast rights from the NRTC for rural Liberty County, Georgia.

Beginning in mid–1993, Mr. Webster and Mr. Hoenig established the various MCG companies to acquire a membership license from the NRTC. Initially, commencing in 1993, Mr. Webster and Mr. Hoenig raised investment capital through the sale of stock in MCG, Inc. The sale of stock was followed in 1994 by the sale of limited liability membership units in a L.L.C. company, through an offering entitled "Summary of Limited Liability Company Joint Venture Offering." (Pl.'s Ex. 3). Mr. Webster and Mr. Hoenig raised a total of $3,794,163.12 through the sale of the stock and the membership units. (Pl.'s Ex. 4A and 4B).

Neither Mr. Webster, nor Mr. Hoenig ever acquired membership status with the NRTC. In late 1995, a committee composed of membership unit investors took control of the Debtor from Mr. Webster and Mr. Hoenig. The Debtor filed a Chapter 7 petition on November 10, 1995, and following an election conducted by the creditors pursuant to 11 U.S.C. § 702, George E. Mills, Jr. was installed as the Chapter 7 Trustee ("Trustee"). (Pl.'s Ex. 1A and 1B).

Trustee filed a Complaint against William E.Webster, Deborah S. Webster, Gregory A. Hoenig, Cynthia M. Hoenig, Multimedia Communications Group, Inc., n/k/a Satellite Communication Corporation, a foreign corporation, Multimedia Communications Group Wireless Associates, L.C., a Florida Limited Liability Company, MCG Management Company, L.L.C., L.C., a Florida Limited Liability Company, Grecyn Limited Partnership, a Florida Corporation, and Grecyn Foundation, L.L.C., a Nevada Limited Liability Company ("Defendants"). (Doc. 1). In Count I, pursuant to 28 U.S.C. § 2201, the Trustee seeks declaratory relief adjudicating the affiliates of the Debtor to be mere alter egos and instrumentalities of one another. In Counts II–XV, the Trustee, asserting standing under 11 U.S.C. § 544(b), seeks the avoidance of fraudulent transfers under Florida Statute ch. 726. Counts XVI–XXIII sought Motions for Temporary Restraining Orders as to each

Defendant. Counts XXIV–XXXIII request the imposition of constructive trusts and equitable liens with respect to the real and personal property of the Defendants. And lastly, Count XXXIV sought the turnover of corporate records.

Defendants deny any actual intent to defraud investors and contend that the MCG venture, as established and operated, was legitimate. Mr. Webster and Mr. Hoenig further contend that any monies transferred to them from any MCG affiliate represented "profit" from Webster's and Hoenig's share of the sale of the Liberty County DBS market. Finally, Defendants raise an affirmative defense that the recovery, if any, should be limited to the total of the allowed unsecured claims against the Estate.

Prior to trial, Plaintiff filed Proposed Inferences of Fact Drawn from Defendants' Invocation of the Fifth Amendment Admissible at Trial. (Doc. 78). Subsequent to the trial, the Defendants filed a Traverse addressing each individual proposed inference of fact. (Doc. 99). The Court considered the Proposed Inferences and Traverse and has drawn the appropriate inferences when permissible.

In Count I, the Trustee seeks a declaratory judgment that "MCG, Inc. and MCG Associates were, in the context of the MCG Enterprise, mere alter egos of the Debtor, Multimedia Communications Group Wireless Associates of Liberty County, Georgia, L.C., and, in reality, all three MCG Enterprise entities were but mere alter egos of Mr. Webster and Mr. Hoenig." (Doc. 1 at ¶ 52). The Trustee alleges that the various MCG companies, while separate legal creations, in fact, shared considerable common elements, including: (1) Mr. Webster and Mr. Hoenig were founders, principal officers, day-to-day managers, and shareholders or limited liability membership unit owners, either directly or indirectly, of all Debtor and affiliated MCG companies; (2) Mr. Webster and Mr. Hoenig operated the entities primarily out of the same business location in Ocala, Florida; (3) the same personnel were used for all MCG related operations; (4) each of these companies shared the same computer network, office equipment, and receptionist.

Additionally, the Trustee put forth evidence that the Companies disregarded certain corporate formalities, such as meetings. Furthermore, the Trustee alleged that funds were freely transferred from the bank accounts held in the various entities' names. (Pl.'s Ex. 6A–6E).

In addition to the evidence of entwined entities, the Trustee argues that Mr. Webster, Mr. Hoenig, and the MCG entities engaged in misconduct, involving the sale of unregistered securities in Hawaii, wherein Webster and Hoenig were fined $10,000 each and MCG was fined $25,000. The Trustee put on evidence to support the Hawaiian ruling showing that the NRTC never had a contractual relationship with the Debtor or any affiliate. The Trustee alleges that the "sham organizations intended to shield Mr. Webster and Mr. Hoenig from personal liability for ostensible corporate or business entity acts and were formed with the sole intent of misleading investors." (Doc. 1 at ¶ 53). The Trustee seeks a judicial declaration that no real distinction in fact or law exists between the Debtor and any of the MCG affiliates, and as such, he should be permitted to administer the affairs, as a whole, of "MCG."

Defendant, Mr. Webster, testified that MCG, Inc. was acquired to develop the wireless business, that MCG Wireless Associates was formed to fund the Liberty County, Georgia project, that the Debtor was formed to hold and to operate the Liberty County Direct TV market, and that MCG Management Co. was formed solely to operate the Blair Building. Mr. Webster further testified that separate books were kept for each entity and funds from investors for each particular entity were deposited in the separate account for that entity. Defendants argue that the only problem surrounds the premature distribution of profits. Furthermore, the Defendants contend that no one was duped into believing that the companies were one entity.

As to the fraudulent transfer counts, the Trustee argues he has produced a "qualifying unsecured creditor" in Terry Hopkins. On the claims register, there exists a proof of claim filed on behalf of Terry Hopkins. (Pl.'s

Ex. 8A). The Trustee alleges that the Hopkins' proof of claim with attached documentation establishes that (i) Ms. Hopkins was solicited by an individual named Stuart Gorenstein, described by Mr. Webster as a representative of "MCG," to invest in the DBS market; (ii) Ms. Hopkins invested, on December 17, 1993, at least the sum of $35,000.00 in a business venture known as "Las Vegas DBS/Multimedia Comm"; (iii) Ms. Hopkins received a letter dated June 23, 1994 from Mr. Webster which acknowledged receipt from Mr. Gorenstein of Ms. Hopkins' investment monies and offered Ms. Hopkins investment documents pertaining to the MCG Liberty County venture which, once completed, would enable Mr. Webster to issue Ms. Hopkins an MCG certificate of ownership; (iv) Ms. Hopkins objected to having her funds invested in any market other than the Las Vegas DBS market, and she was allegedly led to believe her funds were in the Las Vegas market; (v) in approximately April of 1995, Ms. Hopkins learned for the first time that MCG had no interest in the Las Vegas market, and she demanded the return of her investment; (vi) Ms. Hopkins was informed that her funds were not available and had been invested in the Liberty County, Georgia syndication.

The Trustee further testified that the financial records of the Debtor contained a December 1993 bank statement and deposit slip, dated December 22, 1993, reflecting deposit of Ms. Hopkins' check in the amount of $35,000 made payable to "Las Vegas DBS/ Multimedia Comm" into "Benbow Astronautics, Inc. dba Multimedia Communications Group, Inc." account number 0072–00158591 (Pl.'s Ex. 8B and 8C). At the request of the Trustee, the Ocala Police Department reviewed the books and records of the Debtor and did not find an investor file on Ms. Hopkins. The Trustee also testified that he reviewed the Multimedia Communications Group, Inc. "Shareholders List" and the Multimedia Communications Group Wireless Associates, L.C. "Membership List" and could not find an investor listing for Ms. Hopkins. (Pl.'s Ex. 4A and 4B).

The Trustee argues that 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3001(f) provide that a timely filed proof of claim is prima facie evidence of a bona fide claim unless a party in interest objects. Therefore, the Trustee draws the conclusion that Ms. Hopkins is a creditor, who is not an investor, and therefore, she constitutes a "qualifying § 544(b) unsecured creditor" necessary for standing under Florida Statute ch. 726.

Defendants argue that Terry Hopkins' claim is a recision claim for an investment in Multimedia Communications Group, Inc. Defendants contend that the investment was made long before the Debtor was even formed and that the checks are not made out to the Debtor; they are made out to "Las Vegas DBS/ Multimedia Comm." The recision demand is directed to MCG, Inc. Terry Hopkins does not appear on the member list of the Debtor. In sum, Defendants state that Terry Hopkins may be a creditor of MCG, Inc. but is not a creditor of the Debtor.

### CONCLUSIONS OF LAW

First, addressing the declaratory judgment, in order to "pierce the corporate veil" in Florida, the Court must find that:

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporations; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Holdings Corp.)*, 166 B.R. 461, 469 (Bankr.M.D.Fla.1994), *aff'd* 176 B.R. 223 (M.D.Fla.1994) (*citing Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984)). The *Hillsborough* court further stated that "Florida ... courts disregard the corporate entity in only the most extraordinary cases. Those who seek to pierce the corporate veil ... carry a very heavy burden." *Id.* at 468.

█ Clearly, the evidence demonstrates that the various entities were related. However, even with the evidence of common man-

agement, common business location, common personnel, common computer network, office equipment, and receptionist, and the absence of corporate formality, the Court cannot find that the entities were in fact alter egos of one another. Therefore, the Court finds that the entities, although similar in many aspects and related to an extent, did in fact maintain a separate and distinct existence from one another. Separate books were kept for each entity. Notwithstanding a few instances of incorrect deposits, funds from investors for each entity were deposited in the separate account for that entity, and each entity, although all were involved in the Direct TV market, was engaged in its own distinct business practice. Therefore, the Trustee has failed to meet the first element of Florida's alter ego doctrine. Furthermore, the Court is not convinced that the Trustee could meet the remaining elements of fraud and improper purpose and injury to the claimant. The Court does not believe that the evidence presented by the Trustee supports the element that the various entities were used for a fraudulent or improper purpose. The Court finds that the entities were set up to engage in the Direct TV market, which is not a fraudulent or improper purpose. Additionally, the Court finds that the Trustee has not shown that a fraudulent or improper use of the corporate form caused injury to the claimant. As stated previously, the Court does not find that there was a fraudulent or improper use of the corporate form, and secondly, the Court does not believe that the Trustee established the identity of the claimant. If the claimant is the Trustee, acting on behalf of the investors, the Court would find that the Trustee does not have standing to seek redress for their injuries.

In addition to the declaratory action, the Trustee also asserts thirteen counts of fraudulent transfer. The preliminary issue that this Court must decide involves the Trustee's standing under 11 U.S.C. § 544(b). This identical issue was the crux of the Motion to Dismiss filed by all Defendants. (Doc. 34). In the Order Denying the Motion to Dismiss, this Court stated that

> Counts II–XV of the Complaint are brought under the Florida Uniform Fraudulent Transfer Act § 726.105(1)(a) and (b),

made applicable by 11 U.S.C. § 544(b). Pursuant to § 544(b), the Trustee needs an actual existing creditor to proceed, unlike § 544(a) where the Trustee can step into the shoes of a "hypothetical" creditor. Defendant argues that the Trustee lacks standing because the "putative" creditors of this bankruptcy estate are the purchasers of membership units in the debtor limited liability company, and therefore hold equity security interests and are not creditors. It appears to the Court that the investors/members of the debtor limited liability company would not be creditors for the purposes of 11 U.S.C. § 544(b). *See, Sender v. Johnson (In re Hedged–Investments Assoc.)*, 84 F.3d 1267, 1272 (10th Cir.1996); 11 U.S.C. § 101(10) (defining creditor); 11 U.S.C. § 101(5) (defining claim)....

In this proceeding, on the face of the Complaint, the Trustee states that creditors exist whose claims he asserts, although he never names these creditors. For the purposes of this Motion to Dismiss, the Court finds that the allegations by the Plaintiff that creditors exist whose claims he asserts makes the Complaint sufficient on its face to withstand a Motion to Dismiss.

(Doc. 51).

■ The Trustee argues that he has a "qualifying unsecured creditor" in Terry Hopkins; this Court does not agree. First, Ms. Hopkins, intending on becoming an investor in the Las Vegas DBS/ Multimedia Comm., made a check out to that entity. The check was deposited in the Benbow Astronautics Inc. dba Multimedia Communications Group, Inc. account. The evidence at trial demonstrated that Ms. Hopkins' investment failed to make her an investor in any of the related entities. Her name did not appear on the Share Holders list of Multimedia Communications Group, Inc., nor on any of the records or investor files of the Debtor. The Court finds that her funds were converted, as they were not used in the Las Vegas DBS/Multimedia Comm. venture, nor returned to her at her request. Therefore, she may have become a creditor of the entity or individuals that converted and/or benefited

from her funds. She may have a cause of action against the corporation to whom her funds went, which as supported by the deposit slips, is Multimedia Communications Group, Inc. However, the evidence at trial did not prove that she had become a creditor of the Debtor. As previously stated, the evidence produced at trial does not support a finding that all the entities were alter egos of one another; therefore, although she may be a creditor of one of the entities, she is not a creditor of the Debtor. Her funds were not traced to the Debtor. The Debtor was not even in existence at the time she sent in her check. Furthermore, there was no direct proof that this Debtor converted her funds for its own benefit, and therefore, she fails to qualify as a creditor of this Debtor.

In addition to Ms. Hopkins not being a creditor of this Debtor, the Court would reiterate its ruling on the Motion to Dismiss that the investors in the Debtor would not be "qualifying creditors" for the purposes of § 544(b). Therefore, the Trustee failed to produce a qualified creditor as required by § 544(b), and this Proceeding should be dismissed. This Order is entered without prejudice for the equity security holders to file suit against the Defendants in an appropriate forum, and for Ms. Hopkins to file suit against the entity or individuals who converted her funds.

Furthermore, the Court notes that many of the fraudulent transfer counts include allegations against Deborah Webster and Cynthia Hoenig. Based upon the documents in evidence and the testimony of the witnesses, the Court finds that neither of these individuals had any involvement with the operation of the Debtor corporation.

Addressing the remaining Counts, the Court finds that Counts XVI–XXIII, which were Motions for Temporary Restraining Orders, were previously disposed of by this Court. Lastly, Counts XXIV–XXXIII which requested the imposition of equitable liens and constructive trusts were dependent upon the Trustee prevailing on the fraudulent transfer counts. As the Court has denied the Trustee's standing to assert the fraudulent transfer counts, the imposition of equitable liens and constructive trusts have no underlying basis.