In re RICCI INVESTMENT COMPANY, INC., Inland Oil Products, Inc., Monrovia Oil Products, Inc., and Salina Investment, Inc., Debtors.

VAN COTT, BAGLEY, CORNWALL & McCARTHY, W. LaMonte Robison and Robison, Hill & Company, Appellants,

v.

B.R. & F., L.C., Western States Investment, L.C. and the Reorganized Debtor, Appellees.

No. 2:97 CV 00181K.

United States District Court, D. Utah, Central Division.

March 25, 1998.

John A. Snow, Gerald H. Suniville, Stephen K. Christiansen, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for Van Cott, Bagley, Cornwall & McCarthy.

Gerald H. Suniville, Stephen K. Christiansen, Van Cott, Bagley, Cornwall & McCar-

thy, Salt Lake City, UT, for W. Lamonte Robison.

Duane H. Gillman, R. Mont McDowell, McDowell & Gillman, P.C., Alan Smith, Salt Lake City, UT, for Ricci Investment.

Duane H. Gillman, R. Mont McDowell, McDowell & Gillman, P.C., Salt Lake City, UT, for Inland Oil Products, Monrovia Oil Products, Monrovia Oil Products, and Salina Investment.

Bryce D. Panzer, Blackburn & Stoll, L.C., Salt Lake City, UT, for Western States Investments and BR & F.

## OPINION AND ORDER

KIMBALL, District Judge.

This matter is before the court on an appeal from the United States Bankruptcy Court for the District of Utah, Central Division. The matter came on for hearing on March 10, 1998. Appellants were represented by Gerald H. Suniville and Appellees were represented by R. Mont McDowell. Oral argument was heard and the court took the matter under advisement. The court has carefully considered all briefs and other materials submitted by the parties. The court has further considered the law and facts relevant to this appeal. Now being fully advised, the court enters the following Opinion and Order.

### I. *BACKGROUND*

This matter originated as two appeals from three separate orders from the Bankruptcy Court all arising out of the same case. These appeals were properly consolidated in an Order dated September 18, 1997. The appellants in this matter include W. LaMonte Robison, the trustee, Robison, Hill & Co., the court appointed accountant for the trustee, and Van Cott, Bagley, Cornwall & McCarthy, (Van Cott), the court appointed attorneys for the trustee. The appellees are B.R. & F., L.C. and Western States Investments, L.C., parties in interest as the reorganized debtors.

The first Order being appealed from is dated January 10, 1997 and partially disallowed Van Cott's attorney's fees sought pursuant to Van Cott's Third and Final Verified

Application of Trustee's Counsel For Allowance of Interim and Final Compensation as an Administrative Expense. Of the $106,-476.00 in fees sought by the appellants, the Bankruptcy Court disallowed $27,680.50 on the basis of lack of benefit to the debtor's estate and because the appellants were in violation of Bankruptcy Rule 3016(a). As to Van Cott only, the Bankruptcy Court disallowed fees relating to the preparation of the Grand Junction Escrow Agreement in the amount of $4,467.00 as providing no benefit to the estate and because the sale of the properties did not take place according to the terms authorized by the Bankruptcy Court. The second Order, dated March 18, 1997, partially disallowed Robison's trustee compensation and professional fees to the accounting firm of Robison Hill and Company sought pursuant to a Third and Final Verified Application of W. LaMonte Robison for Allowance of Interim and Final Compensation as Trustee and Accountant for Trustee as an Administrative Expense as providing no benefit to the estate. The third Order dated July 8, 1997 partially disallowed fees to Van Cott for fees and costs incurred to defend Van Cott's and the Trustee's Third Application for fees and costs exclusively related to defense of Trustee's Third Application, (the Supplemental Application). Van Cott requested a total of $78,257.12 in fees and $13,605.97 in costs. Of this the bankruptcy court allowed $15,256.37 in fees and $2,933.91 in costs. The trustee requested $36,473.12 in fees and $7,917.60 in costs and was allowed $7,176.81 in fees and $1,538.85 in costs. The accounting firm requested $4,700.00 in fees and $160.77 in costs and was allowed $913.48 in fees and $31.24 in costs. The Bankruptcy Court disallowed these fees on the basis that the work provided no benefit to the estate. The appellants filed timely appeals as to all of these orders.

## II. *STANDARD OF REVIEW*

In the review of orders from the Bankruptcy Court, there are three standards of review that may be applied. First, where the Bankruptcy Court is the finder of fact, the court's factual determinations will not be set aside unless they are "clearly erroneous." *See* Bankruptcy Rule 8013 and *Taylor v. I.R.S.*, 69 F.3d 411 (10th Cir.1995). A finding of fact is clearly erroneous only if the

court has a definite and firm conviction that a mistake has been committed. *See In re Mama D'Angelo, Inc.*, 55 F.3d 552 (10th Cir.1995). Secondly, a bankruptcy court's ruling involving findings of fact may be overturned if the findings are premised on improper legal standards or on proper legal standards improperly applied. In these instances, the review of this court shall be *de novo. See In re Hedged–Investments Associates, Inc.*, 84 F.3d 1267 (10th Cir.1996). Lastly, this court will exercise *de novo* review over the Bankruptcy Court's conclusions of law. *See Hall v. Vance*, 887 F.2d 1041 (10th Cir.1989). Further, mixed questions of law and fact which involve primarily a consideration of legal principles are reviewed *de novo. See In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir.1988).

## III. *DISCUSSION*

### A. *January 10, 1997 Order and March 18, 1997 Order*

The Order of the Bankruptcy Court, dated January 10, 1997, granted in part and denied in part Van Cott's Third and Final Verified Application of Trustee's Counsel for Allowance of Interim and Final Compensation as an Administrative Expense. This Order was based upon whether certain tasks performed by the trustee's attorneys were beneficial to the estate, and the impact of a violation of Fed. R. Bankr.P. 3016(a) on the allowance of fees.

In July of 1993, the debtor, Ricci Investment Company, Inc., filed a petition for relief under chapter 11 of the Bankruptcy Code. As a result of allegations of mismanagement, an examiner was appointed and an examiner's report was issued in May of 1994. The examiner's report recommended, among other things, that a trustee be appointed. W. LaMonte Robison was appointed as Ricci's chapter 11 Trustee in June of 1994. The Trustee employed Van Cott, Bagley, Cornwall & McCarthy as his attorneys in June of 1994. The Trustee also employed Robison, Hill & Company as accountants.

Ricci caused a plan and disclosure statement to be filed on February 17, 1995 on behalf of B.R. & F. and Western States

Investments, L.C. (collectively the Proponents) for the Consolidated Debtors. The Trustee opposed the plan, and the disclosure statement was never approved. The Proponents filed a Second Consolidated chapter 11 Disclosure Statement and Plan of Reorganization on October 4, 1995. On November 13, 1995, Van Cott, on behalf of the Trustee, filed an Objection to the Second Consolidated Plan. On December 4, 1995, the Bankruptcy Court approved a modified version of the Proponents' Disclosure Statement and fixed January 12, 1996 as the last day for filing and serving written objections, acceptances or rejections of the Proponents' Plan. On January 12, 1996 the Trustee filed another objection to the Second Consolidated Plan. On January 16, 1996, the Trustee instructed Van Cott to prepare a Trustee's Disclosure Statement and Plan. The Trustee's Plan was filed on February 16, 1996 even though progress was being made toward resolving the issues with the Proponents' Plan. The Trustee did not have leave from the Bankruptcy Court to file the February 16, 1996 plan.

The Proponents filed a motion to strike the Trustee's Plan and Disclosure Statement asserting a violation of Fed. R. Bankr.P. 3016(a). The motion to strike was never heard because on March 8, 1996 the Proponents' Plan was confirmed, terminating the appointment of the Trustee and reinstating the Proponents' control over the Consolidated Debtors.

Prior to the filing of the Trustee's Plan, while the Proponents were moving forward with reorganization efforts, the Trustee, with the assistance of Van Cott, was negotiating a sale of two parcels of real property situated in Grand Junction, Colorado, (Grand Junction Properties), to Westec Fruita, Inc. On October 13, 1995, Van Cott, on behalf of the Trustee, filed the Trustee's Motion for Authority to Sell Real Property of the Estate, not in the Ordinary Course of Business, Free and Clear of Liens, Notice of Terms of Sale and Notice of Hearing. (Grand Junction Motion). The Grand Junction Motion sought Court approval for the sale of the Grand Junction Properties to Westec for $287,000 on an "as is" basis free and clear of all liens and encumbrances pursuant to the provisions of 11 U.S.C. § 363(f). The Bankruptcy Court held as part of the January 10, 1997 Order that the sale of the Grand Junction Properties did not take place according to the terms authorized by the Court pursuant to the Grand Junction Motion and disallowed fees to Van Cott in the amount of $4,467.00.

■ Appellees argue that the Bankruptcy Court's January 10, 1997 Order should be affirmed on the basis set forth in the Order, i.e. the fees related to preparation of the Trustee's Disclosure Statement and Plan provided no benefit to the Consolidated Debtor's estate, and further, the filing of the Trustee's Plan was in violation of Fed. R. Bankr.P. 3016(a). Appellees further argue that the court properly found that the sale of the Grand Junction Properties was not according to the terms authorized by the court and therefore were not compensable. Appellants argue that the preparation of the Trustee's plan was beneficial to the estate as was other work done in conjunction with the preparation of the plan. They further argue that the sale of the Grand Junction Properties was according to the terms of the Order and clearly benefited the estate and therefore the January 10, 1997 Order should be reversed.

Bankruptcy Rule 3016(a) provides in pertinent part as follows:

> A party in interest, other than the debtor, who is authorized to file a plan under § 1121(c) of the Code may not file a plan after entry of an order approving a disclosure statement unless confirmation of the plan relating to the disclosure statement has been denied or the court otherwise directs.[1]

Fed. R. Bankr.P. 3016(a) establishes a limited restriction for filing a competing plan. "If the debtor's disclosure statement is approved and confirmation of the plan is denied, competing plans may be filed without permission of the court. However, absent denial of confirmation of a plan the rule prohibits filing of

---

1. Fed. R. Bankr.P. 3106(a) was eliminated effective December 1, 1996. The Bankruptcy Court correctly applied the rule as it existed prior to

December 1, 1996 because that is the period of time relevant to its decision.

a competing plan unless the 'court otherwise directs'" *In re Mother Hubbard, Inc.*, 152 B.R. 189 (Bankr.W.D.Mich.1993). *See also In re Express One International Inc.*, 194 B.R. 98 (Bankr.E.D.Tex.1996) (no other party will be permitted to file a plan unless and until [debtor's] plan is denied). In this matter the appellees' disclosure statement was approved on December 4, 1995. The plan had not been denied and in fact was ultimately accepted on March 8, 1996. However, on February 16, 1996 the appellants filed their plan and disclosure statement without any court authorization to take this action. Appellants' actions clearly violated rule 3016(a).

In addition to the rule violation, the Bankruptcy Court further disallowed fees to Van Cott in the amount $20,652.50 for the preparation of the Trustee's Disclosure Statement and Plan on the basis that it provided no benefit to the estate as is required by *In re Lederman*, 997 F.2d 1321 (10th Cir.1993). As will be discussed in more detail below, this court does not agree with the broad reading of *Lederman* as implemented by the Bankruptcy Court, however, this court does agree with the Bankruptcy Court's finding that the preparation of the Trustee's Disclosure Statement and Plan did not provide a benefit to the estate, nor were the fees incurred necessary or reasonable due to the fact that the appellants should have known that the filing of this plan was in violation of Rule 3016 and it was unlikely that the plan would ever be confirmed.

█ Lastly, this court will not disturb the findings made by the Bankruptcy Court as to the Escrow Agreement relating to the Grand Junction Properties. The Bankruptcy Court found, based upon the evidence presented, that the fees relating to the Escrow Agreement to the extent that they were expended to obtain and allow a result contrary to the Grand Junction Order are not compensable. The finding that the sale of the Grand Junction Properties did not take place according to the terms authorized by the Court pursuant to the Grand Junction Motion is a finding of fact that will not be disturbed unless it is clearly erroneous. This court does not find that the Bankruptcy Court committed clear error and therefore this court need not reach the issue of whether or not the Escrow Agreement benefited the estate.

For the reasons stated above the January 10, 1997 Order of the Bankruptcy Court is AFFIRMED in its entirety.

The Order dated March 18, 1997 disallowed partial fees to LaMonte Robison and Robison, Hill & Company for essentially the same reasons as fees were denied to Van Cott. For the reasons stated above the March 18, 1997 Order is also AFFIRMED in its entirety.

### B. *July 8, 1997 Order*

As stated above, on March 8, 1996 the Bankruptcy Court confirmed a reorganization plan for the debtor effective April 1, 1996. The plan went into effect as ordered and the Trustee, Mr. Robison, was discharged. The court specifically retained jurisdiction over the case to decide the outstanding fee issues. The appellants timely filed their final fee applications. Shortly before the hearing on the applications, three parties in interest to the bankruptcy objected. At the hearing on May 30, 1996, the objectors alleged that Mr. Robison had negligently discharged his duties as trustee, causing unspecified damage to the bankruptcy estate and requiring the court to disallow a large portion of the fees incurred during the course of the bankruptcy case. The objectors raised additional objections against the Trustee's accounting and law firms. The court set a scheduling conference for June 10, 1996.[2] Pursuant to the scheduling conference, the Bankruptcy Court entered a scheduling order on June 17, 1996 implementing a series of detailed procedures for discovery and for responses to the objectors' allegations. Acting pursuant to that order, the parties engaged in extensive discovery. Trial was held over six days from October 1996 through February 1997. Following trial, the Bankruptcy Court entered two separate orders rejecting all of the objections to the appellants' final fee applications that are

---

**2.** The appellants argue that they were prepared to resolve the objections at the May 30, 1996 hearing which would have saved a substantial amount in fees, however, the court insisted on setting a scheduling conference and ultimately entered a lengthy scheduling order.

material to this appeal. The Bankruptcy Court also found the negligence claims to be meritless, unsupported by evidence, and causing no damage to the bankruptcy estate. The appellants subsequently submitted supplemental applications for the fees and expenses generated by defending against the objections. The parties in interest again objected to the Supplemental Fee Application. The Bankruptcy Court heard argument on June 23, 1997 and the Order of July 8, 1997 followed.

■ Appellants argue that the Bankruptcy Court's order, limiting their fees on the Supplemental Application should be overturned. Appellants argue that "necessary" fees under § 330(a) are not limited to those that benefit the estate, but include fees incurred to meet statutory obligations. Appellants further argue that *In re Lederman*, 997 F.2d 1321 (10th Cir.1993) was improperly interpreted by the Bankruptcy Court. They argue that fees are not limited to those that benefit the estate, but include those that are necessary and reasonable under § 330.

■ The pre–1994 version of 11 U.S.C. § 330(a), which applies in this case, provides in pertinent part that:

After notice... and a hearing, ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney-

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be and by any paraprofessional persons employed by such trustee, professional person or attorney, as the case may be, based on the nature, the extent and the value of such services, the time spent on such services, the cost of comparable services other than in a case under this title: and

(2) reimbursement for actual, necessary expenses.

This court agrees with the appellants that necessary fees include, but are not limited to those that benefit the estate. In *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 587 (Bankr.D.Utah 1985) in discussing § 330(a) the court pointed out that:

Congress substituted "reasonableness" and "actual" and "necessary" for "benefits conferred" as the test for fee allowances under the Code. Hours may be reasonably and necessarily spent and, therefore be compensable under Section 330 even though the effort did not result in a benefit to the estate.

*Id.* at 587. This court also agrees with the reasoning set forth in *In re HCS Corp.*, 59 B.R. 307 (Bankr.S.D.Cal.1986) which held that "... weighing the factors of § 330, court appointed attorneys are entitled to compensation whether or not any benefits were in fact conferred on the estate." *Id.* at 310. The *HCS* court went on to hold that "[t]rustees are an integral part of the successful operation of the bankruptcy laws. If this Court required the trustee to pay for his or her own representation, ... the practical effect would be that few trustees would be willing to serve." *Id.* It is accurate, as appellees argue, that these cases are pre *Lederman*, however, a careful reading of *Lederman* makes it clear that fees such as those requested in the Supplemental Application are still allowable. *In re Lederman* holds that § 330 of the Bankruptcy Code gives the bankruptcy court discretion to award a reasonable fee for "actual and necessary services". *Id.* at 1323. The Bankruptcy court interpreted *Lederman* to hold that fees must provide a benefit to the estate before compensation will be paid. It is true that *Lederman* holds that whether or not fees incurred are a benefit to the estate is more than just one of many factors to be considered. The court holds that it is a "threshold concern". However, *Lederman* does not hold that necessary fees will always be denied if they are not also of a benefit to the estate. To the contrary, *Lederman* holds that *one* element of whether or not fees are necessary is whether or not they are of a benefit to the estate. However, this is not the only element to be considered. In the case at hand, the fees requested in the supplemental application were actual and necessary. One can not expect the appellants in this case to ignore the objections made by the appellees. There was no choice but to go forward with

the scheduling order as mandated by the Bankruptcy Court and fees were actually and necessarily incurred. It may be true that at this point in the litigation the fees incurred did not provide a tangible benefit to the estate, however, in this situation they were still necessarily incurred.[3] The Bankruptcy Court's interpretation of *Lederman* is overly broad. Necessary and actual fees are allowable in situations where the fees are unavoidably incurred, as is the case here, even if they are not of a benefit to the estate.

This aspect of the case is also distinguishable from *Lederman* in that in *Lederman* the fees were being sought by the debtor's counsel for fees incurred in preparing a plan that was ultimately denied by the bankruptcy court based upon the finding that the plan was filed in bad faith. Although there was no finding of bad faith in this matter, *Lederman* is more analogous to the issues discussed in Part A of this Opinion and Order than it is to the issue of fees raised in the Supplemental Application.

For the reasons stated herein, it is hereby

ORDERED that the Bankruptcy Court's Order of January 10, 1997 is AFFIRMED. It is further ORDERED that the Bankruptcy Court's Order of March 18, 1997 is AFFIRMED. It is further ORDERED that the Bankruptcy Court's Order of July 8, 1997 is REVERSED. Consistent with this Opinion and Order appellants are to receive compensation for the total fees requested in the supplemental application as follows. Van Cott is to receive attorney's fees in the total amount of $78,257.12 and costs in the total amount of $13,917.60. The Trustee is to receive fees in the total amount of $36,473.12 and costs in the total amount of $7,917.60. The accounting firm is to receive fees in the total amount of $4,700.00 and costs in the total amount of $160.77.

---

**3.** It is also important to note that the appellant, Van Cott, had already voluntarily reduced the amount of fees requested from $165,032.00 to $78,257.12 and costs from $28,558.56 to $13,-605.97 so as not to charge for unproductive time or time spent defending sustained objections.