**In re Mary K. MORRIS, Debtor.**

**Bankruptcy No. 692–61930–H07.**

United States Bankruptcy Court, D. Oregon.

April 5, 1993.

---

Barry L. Taub, Eugene, OR, for debtor.

Paul J. Garrick, Eugene, OR, for U.S. Trustee.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

The U.S. Trustee has filed a motion to dismiss this case under 11 U.S.C. § 707(b)[1] on the basis that the filing of the Chapter 7 constitutes a substantial abuse of its provisions. At the hearing the court rejected the debtor's assertion that, pursuant to Bankruptcy Rule 1017(e), the motion was untimely.

■ The debtor has raised a further procedural defense to the motion which neces-

sarily must be addressed prior to any discussion on the merits. The debtor asserts that the statutory language prohibits a § 707(b) motion from being filed by the U.S. Trustee after being contacted about abuse, as the U.S. Trustee concedes it was, by a creditor. The debtor does not contest the U.S. Trustee's assertion it then made its own independent investigation of the facts prior to filing the motion. She argues simply that Congress intended that the statutory language prohibit creditors from using the threat of a § 707(b) motion to obtain concessions from the debtor. She believes that there is no difference between coercing the debtor by filing a motion with the court and coercing the debtor by contacting the U.S. Trustee and asking that a motion be filed. The debtor suggests that if the U.S. Trustee is interested in bringing a motion under § 707(b) the appropriate procedure is for its representative to be present at the § 341 meetings or listen to the tapes of § 341 meetings to obtain the relevant facts. The U.S. Trustee's attorney has responded that it is impossible for its small staff either to be present at all § 341 meetings or listen to all the related tapes. He asks the court to interpret the statutory language of § 707(b) as did the Fourth Circuit Court of Appeals in *In re Clark*, 927 F.2d 793 (4th Cir.1991).

In *Clark* a creditor sent the U.S. Trustee a letter asking it to consider filing a § 707(b) motion. After receiving the letter the U.S. Trustee conducted its own investigation. In reversing the district and bankruptcy courts *Clark* held that the U.S. Trustee may make a motion under § 707(b) on the suggestion of a creditor. It interpreted the statutory language as barring only

"the court from dismissing a debtor's Chapter 7 petition 'at the request or suggestion of any party in interest'; it does not bar the trustee from making a motion at the suggestion of a creditor, or the court from considering the motion. The phrase 'but not at the request or

1. All statutory references hereinafter are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* unless otherwise indicated.

suggestion of any party in interest' modifies what the court can do, since 'the court' is the subject of the sentence. Section 707(b) imposes no such limitations on the trustee."

*Id.* at 797.

Since 1986 few bankruptcy courts have addressed the issue before me.[2] In *In re Restea,* 76 B.R. 728 (Bankr.D.S.D.1987), at the debtor's § 341 hearing a creditor suggested that the U.S. Trustee look into a possible abuse. Judge Ecker read the statutory language to prohibit the U.S. Trustee from bringing a § 707(b) motion after such contact. Judge Ecker cited 4 *Collier on Bankruptcy,* ¶ 707.05, at 707–13, 14 (15th ed. 1987), in support of his position. *Restea,* 76 B.R. at 733. *Collier* states:

Apparently if a party in interest does raise the substantial abuse issue the court may not hear it. Moreover, it is likely that once a party in interest raises the issue in a case, the court may not subsequently raise the same issue because it was initially suggested by a party in interest.

The statement in *Collier* is ambiguous. Specifically, it does not address the effect of a creditor's contact with the U.S. Trustee about a possible § 707(b) motion. The statement which appears could be intended only to address the circumstance of a creditor raising substantial abuse directly with the court. Since 1984 the statutory language clearly has condemned this. Whether contact with the U.S. Trustee also is a prohibited practice is a different, more complex, issue.

In *In re Busbin,* 95 B.R. 240 (Bankr. N.D.Ga.1989), Judge Murphy, under facts identical to those before me, held the U.S. Trustee's motion to dismiss should not be denied. She stated that to rule otherwise would discourage parties with information from coming forth and, further, would then prevent courts from addressing issues of abuse in those cases where it was most likely to occur. She recognized the U.S.

Trustee may act as a screening device for any suggestions of abuse made by a party in interest.

11 U.S.C. § 707(b) states:

§ 707. Dismissal

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Although some bankruptcy courts[3] have described the 1984 statutory language of § 707(b) as "plain" or "clear," careful reading of its present provisions and a review of the *Clark* case reveal that if this were ever true it is no longer. This court believes that the present statutory language is ambiguous. Therefore review of its legislative history is appropriate.

Section 707(b) was added to the Bankruptcy Code in 1984 through the Bankruptcy Amendment Act, Pub.L. No. 98–353, 98 Stat. 333. Section 312(2) of the Act, codified at 11 U.S.C. § 707(b), then read:

After notice and a hearing, the Court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this Chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

This court has found no legislative history to this portion of the Bankruptcy Amendment Act other than S.Rep. No. 65, 98th Cong. 1st Sess. 43 (1983) (Senate Report accompanying § 445, Omnibus Bank-

---

2. In *In re Latimer,* 82 B.R. 354 (Bankr.E.D.Pa. 1988), the court would not allow a creditor to use § 707(a) to obtain a Chapter 7 dismissal for substantial abuse in light of the § 707(b) language.

3. *In re Christian,* 804 F.2d 46, 48 (3rd Cir.1986); *In re Campbell,* 63 B.R. 702, 705 (Bankr. W.D.Mo.1986).

ruptcy Improvements Act of 1983, which was a forerunner to the Bankruptcy Amendment Act of 1984). That portion of legislative history does not address the reasoning behind prohibiting parties in interest from bringing an issue of substantial abuse before the court.

The current version of § 707(b) appeared through the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554 § 219(b), 100 Stat. 3088, 3100–3101. The only change which was made to the statute was to add after the words "on its own motion" the words "or on the motion of the U.S. Trustee" and change the connecting clause to begin with "but" rather than "and." At the time of the amendment the change in the grammar probably appeared to be a simple, clear, short way of achieving the desired result. But it is the structure of the new language created by the amendment which has resulted in the ambiguity with which this court now wrestles.

The Joint Explanatory Statement of the Committee of Conference for the 1986 legislation reads in part:

> The conferees anticipate that the panel trustee will work closely in conjunction with the United States Trustee to assist in the discharge of the specific authority granted under Section 707(b). This would include bringing to the United States trustee's attention any information or evidence of fraud or abuse which may provide the basis for dismissal of a case under Section 707(b). The U.S. Trustee may, in his discretion, bring that information to the attention of the court. The conferees anticipate that panel trustees will frequently appear in court regarding the motions filed by the U.S. Trustee under Section 707(b), as amended. Such appearances will be in their capacity as panel trustee and not as a representative of the U.S. Trustee.

Joint Explanatory Statement of the Committee of Conference, *reprinted in* 134 Cong.Rec. H8999 (daily ed. Oct. 2, 1986). Thus in 1986 Congress anticipated that the panel trustee would collect information about the debtor during the administration of the case from which a determination regarding the appropriateness of filing a § 707(b) motion might be made. The first meeting of creditors is of major significance during case administration. The panel trustee, on occasion, will collect sufficient information at this meeting for him to suggest that the U.S. Trustee file a § 707(b) motion. The panel trustee was to act, for this purpose, as the U.S. Trustee's representative.[4] The legislative history to the 1986 Amendments clarifies that the panel trustee is not to be considered a prohibited "party in interest" within the meaning of the statute. HR Conf.Rep. No. 958, 99th Cong., 2d Sess. 46–47 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5247, 5248.

Creditors are invited to ask the debtor specific questions about her financial affairs at the § 341 meeting. It is safe to assume that on occasion a panel trustee's recommendation to the U.S. Trustee to file a § 707(b) motion will rest on creditors' questions of the debtor. This court believes that it would generally be agreed that such a motion subsequently made by the U.S. Trustee would not be "tainted" under § 707(b). Should the result be different if, after asking his questions of the debtor, the creditor suggested to the panel trustee that the answers elicited might support a § 707(b) motion? Should the result be different if the creditor makes no such suggestion to the panel trustee at the hearing but after the hearing contacts the U.S. Trustee directly with the suggestion? Should the result be different if the creditor does not appear at the § 341 hearing but contacts either the trustee or U.S. Trustee? This court believes that the answer to these questions is "no." Under

---

**4.** This is consistent with pertinent provisions of both the Bankruptcy Code and the Bankruptcy Rules. Bankruptcy Code § 341(a) states that the U.S. Trustee shall convene and preside at the first meeting of creditors. Bankruptcy Rule 2003 directs the U.S. Trustee in the procedure to follow at that meeting. The U.S. Trustee performs these duties through the service of panel trustees.

every described scenario the knowledge that the creditor has about the debtor's affairs may be identical. Under each the U.S. Trustee has the opportunity to independently review information about the debtor and decide whether it will file the § 707(b) motion. This court does not know whether or not the creditor in this case contacted the U.S. Trustee after attending the debtor's § 341 meeting. However, for the reasons stated I find that this fact is unimportant.

■ This court agrees with the statutory interpretation of the *Clark* court. I believe, despite the lack of legislative history, that the clause "but not at the request or suggestion of any party in interest" appeared in the 1984 legislation to assure the debtor was not harassed by a creditor either with the threat, or fact, of such motion filed directly by the creditor. Further, I do not believe that a suggestion either to the trustee or U.S. Trustee that the latter should investigate the case for possible substantial abuse constitutes harassment. This is because the U.S. Trustee may always, after investigation, refuse to file such a motion. There are no similar safeguards to a request or suggestion made by the creditor directly to the court as the court has no method for screening such requests prior to consideration at a hearing.

Finally, this court will not interpret ambiguous statutory language in a form to discourage diligent and honest creditors from taking part in the bankruptcy process. Such interpretation would be contrary to the Bankruptcy Code's underlying procedural scheme of creditor participation.

■ I have one last caveat. If the U.S. Trustee files a § 707(b) motion after a request or suggestion has been made to it by a creditor it must demonstrate that it has independently investigated any allegations of substantial abuse prior to filing the motion. Failure to make this showing may result in the dismissal of the motion without a hearing on the merits.

■ Because I have ruled for the trustee on the preliminary issue I now turn to the merits of the motion. There is no disagreement that Ms. Morris' debts are primarily consumer debts. In the Ninth Circuit, if the debtor's debts are primarily consumer debts, her ability to pay the debts when due, as determined by her ability to fund a Chapter 13 plan, is the primary factor to be considered in determining whether granting relief under Chapter 7 would be a substantial abuse. A debtor's ability to pay her debts, will, standing alone, justify a § 707(b) dismissal. *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988).

In this case the debtor originally filed a Chapter 13 petition on May 1, 1992. On the debtor's motion and prior to filing of the schedules, statement of affairs, or a proposed plan the court converted the case to a Chapter 7 on May 21, 1992. Interestingly, the schedules and statement ultimately filed were dated and signed by Ms. Morris on April 21, 1992.

The schedules Ms. Morris filed with the court reveal the following income and expenses:

### CURRENT INCOME OF DEBTOR

| | |
|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly) | $ 4,564.00 |
| SUBTOTAL | $ 4,564.00 |

LESS PAYROLL DEDUCTIONS

| | | |
|---|---|---|
| a. | Payroll taxes and social security | $ 1,646.00 |
| b. | Insurance | $ –0– |
| c. | Union dues | $ –0– |
| d. | Other (Specify).........loans | $ 600.00 |

| | |
|---|---|
| SUBTOTAL OF PAYROLL DEDUCTIONS | $ 2,246.00 |
| TOTAL NET MONTHLY TAKE HOME PAY | $ 2,318.00 |

## CURRENT EXPENDITURES OF DEBTOR

Rent or home mortgage payment ........................................ $ 712.00
Utilities: Electricity and heating fuel .................................. $ 57.00
        Water and sewer ........................................ $ -0-
        Telephone ........................................ $ 100.00
        Other.........gas ........................................ $ 100.00
Home maintenance (repairs and upkeep) ..................... $ -0-
Food ...................................................... $ 250.00
Clothing .................................................. $ 100.00
Laundry and dry cleaning ................................. $ 50.00
Medical and dental expenses .............................. $ 108.00
Transportation (not including car payments).........gas and repairs ..... $ 120.00
Recreation, clubs and entertainment, newspapers, magazines, etc. ......... $ -0-
Charitable contributions ................................. $ -0-
Insurance (not deducted from wages or included in home mortgage payments)
    Homeowner's or renter's ............................ $ 68.00
    Life ............................................... $ -0-
    Health ............................................. $ -0-
    Auto ............................................... $ 113.00
    Other .............................................. $ -0-
Taxes (not deducted from wages or included in home mortgage payments)
    (Specify) .......................................... $ 200.00

TOTAL MONTHLY EXPENSES ..................................... $ 1,978.00

---

In addition she scheduled a residence with a fair market value of $90,000.00, household furnishings of $1,000.00, wearing apparel of $500.00, furs and jewelry of $100.00, a 401k plan of $7,000.00, a retirement plan in an "unknown" amount, and a 1989 Ford worth $8,500.00. Two secured creditors were listed; Barclays Mortgage is shown as holding an $85,000.00 mortgage on the home and Weyerhauser Tacoma Credit Union is shown as holding a $8,900.00 loan secured by the vehicle. The schedules show she has no priority unsecured creditors. She has listed a total of $21,418 in nonpriority unsecured claims. At trial it was shown that the debt of Norwest, scheduled as unsecured for $209, was secured by items of furniture.

The debtor is employed by Weyerhauser Paper Company as supervisor of a maintenance staff of from 24 to 30 people. Her schedules show gross income for the last tax year (1991) of $49,218. Exhibit 5 shows that her year to date gross pay as of December 11, 1992, was $55,800.08. At an hourly rate of $26.26 in December, 1992 she was receiving a gross salary every two weeks of $2,101.05 and a net salary of $1,468.81. At her § 341 meeting of creditors Ms. Morris had testified that 4% of her pay was deducted for her 401k plan. In fact, as she admitted in court and as shown on her December 11, 1992 pay stub, 10% is deducted from her check for her 401k plan. She also testified that the other deductions shown on the pay stub were accurate.

The U.S. Trustee's accountant provided testimony in support of the calculations she had performed which appear on Exhibit 7. After multiplying all payments shown on the pay stub by 26 and dividing by 12, and assuming a 10% deduction for the 401k plan (in the first four columns of Exhibit 7) she reached certain figures which were undisputable. Those figures support the conclusion that the debtor's Schedule I grossly overstates the amount withheld from Ms. Morris' wages each month for all deductions, including the 401k plan. This is particularly true in light of her testimony that the $600 per month shown as withheld for "loans" is no longer withheld. In fact, rather than the amount of $2,246 per month shown as deductions on Schedule I, based on the income shown on the Decem-

ber pay stub Ms. Morris has a total of $1,468.79 taken from her check each month. This provides her with $3,417.99 net income each month rather than $2,318 as scheduled. She offered no explanation for this discrepancy.

The debtor testified that the expenses shown in her Schedule J were not quite accurate. She has a car payment each month of $343 which was not scheduled. She was unable to identify $100 identified as a gas utility expense. She owns a three-bedroom, two-bath condominium for which she pays a total of $1,006 per month in mortgage expense, real property taxes and insurance. In addition she pays $131 per month in condominium association fees and $50 per month for "home maintenance." The last two amounts were not scheduled. None of Ms. Morris' debts are medical. However she testified that she suffers from Crohn's disease and has medical and dental expenses of a total of $330 per month ($200 for the disease, $50 per month dental and $80 per month for antidepressants), although she scheduled a monthly medical payment of $108. She had been seeing a psychiatrist at $60 per week and wanted to continue that treatment. She also gives her grandson around $200 each month and has a $50 per month payment on the secured Norwest debt for furniture. She provided no documentation for the medical and dental expenses, the association fee, home maintenance cost or gifts to her grandson nor any explanation as to why these amounts were not scheduled. Under these circumstances the court will not credit the latter amounts or the monthly medical and dental expenses in an amount over $108.

The U.S. Trustee's accountant prepared her list of expenses on Exhibit 7 from the debtor's schedules or other documents provided by her. The list of expenses in Exhibit 7 is too high in that it reflects the homeowner's insurance payment of $68 separately when in fact it is included in the house payment shown of $1,006.71. Further the utilities should be reduced by $100. Even without these reductions it is clear that based on either the pay that Ms. Morris was receiving on the date she filed bankruptcy or that is reflected by her December, 1992 pay stub she has sufficient income, after necessary living expenses, to fully pay her unsecured creditors in three years. An order granting the U.S. Trustee's motion will be entered. The court will give the debtor 10 days thereafter to convert this case to a Chapter 13. In the event the debtor chooses not to convert the case the court will dismiss it.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.